1
2
3
4
5
6
7
8
9
10

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE

11

Case No.: 21-5605

12

MICHAEL LYNN GABRIEL

13

14                                Plaintiff,

15

16        vs.

17    SHIRLEY N, WEBER,

18    Secretary of State

19                                Defendant.

**CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
) )

20
21
22
23
24
25
26
27
28

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

# CLASS ACTION COMPLAINT

Plaintiff Michael Lynn Gabriel individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Shirley N, Weber, California Secretary of State. Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts and upon the investigation of his counsel and information and belief as to all other matter.

## INTRODUCTION

1.    The human body relies on a beating heart to survive. Voting is "the beating heart of democracy." *League of Women Voters of Fla., Inc. v. Detzner*, 314  F. Supp. 3d 1205, 1215 (N.D. Fla. 2018). The right to vote is a "precious" right, *Harper v. State Bd. of Elections*, 383 U.S. 663, 670 (1966), "of the most fundamental significance under our constitutional structure," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal quotation marks omitted). California's recent action attacking the voting rights of its citizens is like a virus attacking the human heart. Without a remedy to undo the effects, our democracy will die.

2.    California has a long history of imposing racially discriminatory voting requirements. In recent decades, many courts have recognized this history in striking down California voting laws because they discriminated

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

against all citizens.  As late as 1959 and 1960 within living memory California opposed the adoption of both the 14th and 15th Amendment to the US Constitution and only reluctantly finally ratified them.

3.     The target of this lawsuit,  is  the Special California Governor Recall election which continues the legislature's discriminatory tradition. Enacted earlier this month, the democratically controlled California Legislature threw out the rule of law and instituted its own  high handed method to  deny a full and fair election to the People of California.

4.     The California democratically controlled California Legislature in an effort to assure that the recalled Governot Newsom is re-elected changed the existing law so as to effectively limit the number of people who could register for the election as replacement candidate by reducing the filing period to just one week and to prevent  those unable to register within that period to be forced to run as write in candidates and denying them the ability to have their message carried as a candidate statement in the Voter Guide.

5.     The Democratically controlled California Legislature imposed unjustified burdens placed disproportionate burdens on candidates attempting to reach minority voters, Black voters, Latino voters, disabled voters.

6.     The Democratically controlled California Legislature makes a minority candidate getting his or her message out more burdensome by barring write in candidates, who usually are minority candidates from participating in

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF     CASE NO: 21-5605**

the Voter Guide on the same and equal footing as the replacement candidates who were able to make the registration in the artificially narrowed filing period of just seven days.

7.    Indeed, the actions of the Democratically controlled California Legislature represent the classic case of "solutions in search of a problem" that has been found to indicate impermissible race-based voter suppression. *See N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 238 (4th Cir. 20

8.    This Complaint challenges the actions of the Democratically controlled California Legislature  that, individually and cumulatively, make voting more burdensome, particularly for Black, Latino, and disabled voters by making it more difficult for  minority candidates to both get on the ballot and also  getting their political message out to the electorate

9.    The  actions  by  the  democratically  controlled  California Legislature  imposes an unjustified burden on voting and minority candidates running for Governor.  The California legislature identified no state interest sufficient to justify these added burdens.

10.    In addition to impermissibly burdening voters and discriminating against voters on the basis of race or ethnicity, the challenged actions  violate numerous provisions of federal law. For example:

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

- They place disproportionate burdens on voters of color, intentionally denying them an equal opportunity to participate in the political process by denying them access to minority candidates' messages. They thus violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution. The actions also violate the First Amendment to the U.S. Constitution, by limiting protected election-related expressive activities. *Meyer v. Grant*, 486 U.S. 414, 422-23 (1988).

- Even apart from their racially discriminatory motive and impact, the challenged action also place an unjustified burden on the ability of all California voters to exercise their fundamental right to vote. Any state restriction on the right to vote "must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (internal quotation marks omitted). The Democratically controlled California Legislature deliberately and intentionally moved the election date forward so that only 7 days would exist for replacements candidates to file. Furthermore, the Democratically controlled California Legislature in not allowing

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

write in candidates who are properly registered not to be able to place a candidate statement in the Voters Guide prior to the the last date for submission by replacement candidates imposes unequal treatment and severe burdens on the right of candidacy without any legitimate justification, and thus violates the First and Fourteenth Amendments to the Constitution.. Laws regulating protected speech or compelling speech are subject to strict scrutiny, but the Candidate statement restriction is not narrowly tailored and does not serve any compelling state interest.

11.    For all of these reasons, the Democratically controlled California Legislature, the California Secretary of State and Governor Newsom's actions violate the U.S. Constitution and federal law and endangers the right to vote of all Californians, and in particular voters of color. The Court should enjoin the Recall Election for Governor Newsom set for September 14, 2021 and

(a)    order it be reset with the proper 30 days review period mandated by the prior valid law

(b)    order that any write in candidates who properly register as write in candidates before August 6 or Sept 6 if the election is extended 30 days have their candidate statement printed in the Voter's Guide if they comply with the form of the candidate statement and pay the required fee.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THE PARTIES

### Plaintiff

`    12.    Plaintiff **MICHAEL LYNN GABRIEL** is an Arab American attorney and resident of the San Mateo County California.

### Defendant

13.    Defendant **SHIRLEY N. WEBER** is sued in her official capacity as California Secretary of State.Defendant Weber is a person within the meaning of 42 U.S.C.§ 1983 and acts under color of state law. Under California law, the Secretary of State is the chief elections officer of the State and is responsible for the  administration of state laws affecting voting and election

## JURISDICTION

14.    Plaintiff bring this action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by Sections 2 and 208 of the Voting Rights Act, 52 U.S.C. §§ 10301, 10508; and under the First, Fourteenth and Fifteenth Amendments of the United States Constitution.

15.    The Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, and specifically, laws and Constitutional provisions protecting the right to vote.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

Plaintiff bring this action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law. Plaintiff bring this action to secure equitable relief under federal law providing for the protection of voting rights, pursuant to 28 U.S.C. §§ 2201 and 2202.

16.    This Court has personal jurisdiction over Defendant, who is sued only in her official capacities as officers of the State of California or its political subdivisions.

17.    In addition, Plaintiff's activity as a candidate and getting a candidate statement published in the Voters' Guide is prohibited or restricted as a result of the Defendant's actions, and thus, a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

18.    This Court has the authority to enter a declaratory judgment and to provide preliminary injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## CLASS ACTION ALLEGATIONS

19.    This action is brought, and may properly proceed, as a class action, pursuant to Rule 23(a) and 23(b)(2) and (3) of the Fed Rules of Civ Proc.

20.    Plaintiff seeks certification of a Class defined as follows :

### STATEWIDE CLASS

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

21.    All persons in the State of California wishing to run or vote in the in the Recall Election of Gavin Newsom.

22.    Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

**23.    Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, Plaintiff believes, and on that basis allege, that At least 20 other persons had their voting rights violated in a similar manner as alleged herein against the Plaintiff.

24.    **Existence/Predominance of Common Questions of Fact and Law:**

Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    (a)    Violation fo the Voting Rights Act by only giving one week to register for the election.

    (b)    Violation of the Voting Rights Act by not allowing write in candidates under any circumstances submitting a candidate statement for inclusion in the Voter's Guide.

25.    **Adequacy**: Plaintiff is an adequate representative for the Class because his interests do not conflict with the interests of the Class that he seeks to

TITLE OF DOCUMENT: **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

represent. Plaintiff is competent and highly experienced in complex litigation and intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff.

26.    **Superiority**: A class action is superior to all other available means of fair and   efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits  of single adjudication, an economy of scale, and comprehensive supervision by a single  court. Upon information and belief, members of the Class can be readily identified and notified.

27.    Defendant has acted, and refuses to act, on grounds generally applicable to the Class, hereby making appropriate final equitable and injunctive relief with respect to the Class as as a whole.

## FACTUAL ALLEGATIONS

28.`   The Democratically controlled California Legislature passed a law to specifically designed  to move up of the election date up a month and only allow a one week period  to register to run as a replacement candidate.

29.   The prior law required  a thirty day period for  to review the estimated costs of the special election before setting the date. Instead,  the Democratically controlled California legislature  passed a signed by the governor whose recall was to be held  waiving that state law and allowing the election date to be set immediately.

30.    The   sole purpose of the   law was specifically to advance the election date and give people especially minorities less time to enter the race

31.    The result of the new law was that candidates only had 7 days from July 9 to July 16 to file a declaration of candidacy and submit a nominating petition of 65 signatures, file a form 501 Candidate Intention, file their tax returns for the last 5 years, open a campaign bank account and file a Form 700 Statement of Economic  Interests to make the ballot as replacement candidates.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

32.     Anyone like the Plaintiff who was unable to do all in the seven day period could not make the ballot as a replacement candidate but could still run as  a write in candidate   but they would not be their candidate statement included in the Voter Guide even if they were fully registered and approved for the ballot by August 6   for Replacement candidates doing so

33.     Plaintiff,  a Arab American could not get the 65 signatures by that date so was unable to file as  regular candidate. Within just a week period. If the election had been originally set 30 days further back everyone including fellow  minorities would have an additional month to collect the signatories and make the printed ballot as a replacement candidate

34.    Moving the election date up by Governor Newsom was specifically and undeniably intended to prevent candidates and specific minority candidates from entering the race.

35     There had been over 60 persons who had filed From 501 as a candidate for the election but only 41 were able to get the 65 signatures or otherwise comply within the specific filing week so as to become a replacement candidate.  The rest like the Plaintiff  if they choose to run must now do so as write in candidate. Write in candidates still need 65 signatures the same as the replacement candidates. For that reason in this recall election because of the short time, there is no practical difference between the write in candidate and replacement candidate except that the Defendant has rewritten the candidate

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

statement guideline to    bar write in candidates    from having a candidate statement published in the Voters' Guide even if they like the Plaintiff have paid to have it done.

36.    This revision of the candidate statement guidelines followed the Plaintiff's submission of his candidate statement along with the full payment. The subsequent barring of the Plaintiff;s Candidate Statement from the Voters' Guide sprang   from the fact that if published and minority voters saw the support of Jesse Jackson it probably would cost Governor Newsom the election. For that reason alone, Plaintiff and his  planks had to be kept out of the Voters Guide to help Governor Newsom win.

37.    The decision to deny write in candidates in the Voter Guide was made only after the Plaintiff's candidate statement was viewed. It was then realized that if minority voters saw the Plaintiff's candidate statement that enough minority voters and Independents could investigate his web site **_www.MichaelForGov.com_**. They could then join with Jesse Jackson and support Plaintiff on the ATAC Bill, his Immigration initiative and his Legislative corruption reform which would cost Governor Newsom the election.

38.    The Plaintiff's candidate statement  which so alarmed the Democratically controlled California Legislature that it tore up the rule of law to keep from the voters is:

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

"The State of California needs fundamental change. It is the policies and direction of California that are at the heart of this election. Whether an Independent or a Minority, you should consider standing with Jesse Jackson and me in this election. Jesse Jackson and I authored the **Access to American Courts Bill HR2009 (ATAC BILL)** confirming the right of all Americans to be able to sue the government to stop unconstitutional violations. The Biden Administration recently stated in court that Americans cannot sue the government even to stop unconstitutional actions without the government's consent. In response Jesse Jackson has stated the Biden's Administration's reinterpretation of the Constitution tuns the Bill of Rights into a Bill of Mere Suggestions'. I am a conservative while Jesse Jackson is a liberal. yet we both believe that ATAC Bill is the most important constitutional and civil rights bill in 50 years. We ask you stand with us and support the ATAC BILL for all America. Does anyone really have any protectable constitutional rights if no one is allowed to sue when those rights are violated? Besides the ATAC Bill, I have solutions for **IMMIGRATION REFORM, INFRASTRUCTURE REFORM, HIGH SPEED RAIL REFORM, HOUSING DEVELOPMENT REFORM, ENVIRONMENTAL ENERGY REFORM, TAX REFORM, SAFETY THROUGH GUN LICENSING, CASINO GAMBLING** and **LEGISLATIVE REFORM**. Visit my site **www.MichaelForGov.com** and see what Jesse Jackson and I are proposing and then **STAND WITH US: ON THE RIGHT SIDE OF JUSTICE, THE RIGHT SIDE OF THE LAW AND THE RIGHT SIDE OF HISTORY.**"

39.     It was after seeing Plaintiff's candidate statement that the Defendant

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF     CASE NO: 21-5605**

announced that write in candidates could would not appear in the Voters Guide. The Democratically controlled California Legislature does not want the Plaintiff;s Candidate Statement published because it will cost them votes and probably the election.

40.      Independents and Minorities would be shocked to learn that the Biden Administration is attempting to rewrite the Constitution  and the deny all Americans the right to  sue the government to stop unconstitutional violations They would be further shocked to know that  Governor Gavin Newsom has by his silence on the issue tacitly approved the Biden Administration efforts *to turn the Bill of Rights into a Bill of Mere Suggestions as stated by Rev Jackson.*

41.   What started as a basic albeit a large eminent domain case has turned into the first major civil rights constitutional rights case in 50 years along with a constitutional rights  bill being written introduced and then stalled by the Democrats

42.      To briefly  recount what had happened. Last year, the Cherokee filed a federal court class action for the return of their land that was taken and never used under the infamous the 1835 Trail of Tears Treaty along with a fair payment for the land that's not returned. The Cherokees had been forced to accept less than 25% of the actual value of the land while under gunpoint, in chains and in concentration camps for land that they did not want to sale or

leave. Furthermore, up to  10.000 Cherokee died on the Trail of Tears, nearly one half of all Cherokee, on the 2200 miles death march in the worst winter ever recorded on the continental United States. All this was done as every Cherokee is aware in furtherance of the ethnic cleansing program promulgated under the Indian Removal Act, the first of its type in the modern age.

43.    The Biden Administration responded to the complaint by filing  in Delaware  district court to motion to  dismiss  the Cherokee class action lawsuit which is solely based on the unconstitutional violation of the 5th Amendment asserting that the government cannot be sued without its consent through its extension of the **Doctrine of Sovereign Immunity** to the Constitution itself. The last and only time this argument was tried was in 1888 in the case US v Lee and the government failed. Up to now, the Doctrine has only been applied to federal statutes on the basis that since the government created the statute, it can decide who can sue under it. However, the government did nor create the Bill of Rights, the People did and thus the government cannot prevent itself from being sued to stop its unconstitutional violations despite the assertions of the Biden Administration.

44.    It was because of the significance of the Biden Administration's attempt to rewrite the Constitution and bar all future suits against the government to stop unconstitutional actions, that the Rev Jackson who is a Democratic  and  liberal  joined  with  the  Plaintiff  a  conservative  and

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

Independent to write the ATAC Bill HR 2009 Exhibit 3 which Congressman Danny Davis a Democrat introduced on March 28, 2018 into the US House where Nancy Pelosi has effectively killed it.

45    The Biden Administration convinced the District  Court to extend the Doctrine of Sovereign Immunity to the entire US Constitution for the first time. The Cherokee are not done. They are continuing their fight in the courts in the belief that ultimately it will be recognized again that every American, Black, White, Indian and Asian can sue government without its consent to stop unconstitutional  violations. That is what everyone had been taught was every American's right until this lone decision.

46.    The Biden Administration attack on constitutional rights has caused such concern that Plaintiff was asked as the author of the ATAC Bill by members of the Democratic Hispanic Caucus to wrote a summary of the bill to explain how it protects the right of Hispanic People from the Biden Administration,

47.    Plaintiff's summary of the ATAC Bill is set forth as Exhibit 2.  The Democratic Congressional Hispanic Caucus is planning upcoming meetings with Rev Jackson, and Congressman Davis  to determine its  response to the Biden Administration's assault on the constitutional right to sue the government and hold it accountable for its unconstitutional actions. There seems to brewing a civil war in the Democratic Party over Biden's assault on the Constitution. Thus,

the Democratically controlled California Legislature would have a reason to conceal all of this from minority and Independent voters by refusing to include Plaintiff's candidate statement in the Voters' Guide.

48.    **The ATAC Bill is the first major Constitutional Bill in 50 years.** While the ATAC Bill is brought by the Cherokee it applies to all Americans as all it does is  confirm what the People have always believed - that all Americans have the right to sue the government without the government's consent in order to to stop it's unconstitutional actions.

49.    he Indian vote will be critical in the upcoming midterm and 2024 Presidential elections. It is therefore quite natural for the Democratically controlled California legislature to try to conceal from the Indian voters how fellow Indians have been mistreated by the Biden Administration and other Democrats.

50.    President Biden had announced a few days after taking office sweeping Native American and minority programs for the redress of the harms done to them over the years. However, those programs appear not to apply to the Cherokee. Less than a week after making that announcement President Biden moved to dismiss the Class Action on the ground that no one sue the government even to stop unconstitutional actions.

51.    The hypocrisy of this Democratic position is highlighted even further in that it was the Cherokees who are responsible for giving the control of

the Senate to the Democrats. It was the 28,000+ voting bloc of Indian justice supporters that the Cherokees at the last minute threw behind Senator Ossoff which gave him his victory. This came about because Senator Ossoff's mother had convinced Stuart Anglin the Cherokee lead plaintiff that he was a supporter of Indian justice. The 28,000 votes if taken away from Ossoff and given to Senator Perdue instead would have given him the election.

52    The Cherokee regret supporting Ossoff. Now having won, Ossoff will not even take Cherokee calls or setup an appointment to speak about Cherokee issues. So Be it. The Cherokee elected one senator, they can do so again not just for Georgia but Alabama as well in its 2022 election.

53    On the national scene, Native Americans compose the largest uncommitted voting bloc in the nation. In the 2010 census, 819000 people identified themselves as having Cherokee lineage. When all Indians, their non-indian relatives and friends in support of Indian justice come together that is a bloc of over 5 million people. This bloc can go either Republican or Democratic depending on how the government handles Indian justice. The first test of that commitment to Indian Justice is the Cherokee Trail of Return Bill.. If just 1300 Cherokee can deliver 28,000 votes to Democrats in a short period of time what can 819000 do in a year and a half? Perdue could not see this and Ossoff has ignored this fact, but the Cherokee are moving on.

54. Plaintiff's second plank is an immigration reform bill which is not an

TITLE OF DOCUMENT: **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

amnesty and solves immigration reform. Such an initiative is immensely unpopular with  the Democratically controlled California legislature as it would take support from the Democratic party while giving a pathway to citizenship to illegal aliens for the first time. The Plaintiff's immigration reform  is not an amnesty, requires illegals to work for their citizenship, does not cost the state, money and in fact probably makes the state money and cures the problem forever so the country will not have the problem ever again. The Democratic Legislature and Governor Newsom do not want minorities and independent to know of Plaintiff's solution and thus it is moving the election up has a disparate impact on minorities by keeping this information from them.

55.    Plaintiff's third Plank is for Legislative Corruption Reform, It bars the appearance of impropriety and possibility of corruption by barring government officials and their staff from serving on for profit boards. This problem is manifested in the corruption investigation of Hunter Biden where allegations of 10% of the fees he received from clients for alleged influence peddling were supposedly paid to his father President Biden.  This reform will cost many members of the legislature fortunes. The House  has recently required it of their members as did the Senate so it is time now to clean up California.

56    Is it any wonder when the Democrats saw these three planks that they tore up the rule of law and have done everything they could to keep voters from seeing these planks by keeping the Plaintiff out of  the Voter's Guide.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

` 57.    The refusal to publish minority candidate statements received prior to Aug 6 from registered write in candidates violates  the voting rights act and the 14 and 15 amendments to the US Constitution as well as the California Constitution

58.    To be listed in the voter guide   the only stated requirements  is that the people seeking to run file a declaration of candidacy, the candidate statement and pay the fee of $6250. Plaintiff did all that and then after accepting the payment  the California Secretary of State rewrote the candidate statement rules Exhibit 1 and then reversed itself and refused the accept Plaintiff;s  candidate statement. The defendants stated for the first time that only regular candidates can appear on the printed ballot. Thus under this  revision of the rules write in candidates even those who Plaintiff will be approved  before the August 6 print deadline date cannot be in the Voters Guide, but the defendant kept the payment

59.    The Defendant's actions were a blatant efforts to keep minority nominees, such as Plaintiff an Arab American,  from reaching the electorate. This is a clear violation of the voting rights act

60.    The guidelines required that Plaintiff both file a Form 501 and pay the fee of $6250 both of which Plaintiff  had done. Nothing in the instructions said that the application would be limited to replacement candidates alone.

61.    Furthermore the date for payment of the fee for replacement candidates is August 6 in order so as to make the to Voters Guide

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

"If a payment for the candidate statement is not received, or if the payment is made by a check and it does not clear the candidate's banking institution before the end of the state Voter Information Guide public display period (August 6, 2021), the candidate statement will not be printed in the state Voter Information Guide.|"

62.     Write in candidate should have the August 6 date as well to be in the guide as the state has not yet prepared ballot so there is no burden on the state in both adding the names of write in candidates who have qualified for the election as of that time and also putting  their candidate statements in the voter guide.

63.     The California Supreme Court in Thompson vs Mellon 9 Cal. 3D 97 (1973) restated that the right to run for office is a fundamental right.

"We concluded in Zeilenga that the right to hold office was a fundamental right and that restrictions upon its exercise must, therefore, be strictly scrutinized"

64.    Thus a strict scrutiny test will be applied to any decision on refusal to accept a candidate prior to the August 6 date . There is no reason not to accept Plaintiff's candidate statement for inclusion into the voting guide as long as Plaintiff make the ballot by August 6. That is the same treatment for replacement candidates who do not pay their fee by then. Use of that date for write candidates to be in the voter guide does not disrupt in the election process

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

65.    The new limitation of who can be on the Voter Guide is arbitrary, capricious and unreasonable as there is no basis for limiting the Plaintiff's access to the Voter Guide if he qualifies for the election by August 6 which is the last date for replacement candidates to be in the Voter's Guide by paying for their candidate statement an act which the Plaintiff has already done

66.    These actions were was primarily directed at minorities and minorities because Jesse Jackson and Plaintiff have created planks for presentation to the California people which would pull the black, Hispanic and Independent vote from Governor Newsom and cost his the election. Keeping Plaintiff as well as other minorities off the ballot and out of the Voters Guide is a deliberate attempt to keep minorities from presenting  and  their ideas and participating in this election

67.    The remedy is the twofold for these violations

1.    Moving the election back to at least Oct 14 when it should have been held at the earliest if the discriminatory  law moving the election forward had not been passed

2.    Printing the names of write in candidates  and on the ballot and having their candidate statements accepted for the Voters Guide if they qualify for the election by August 6 or Sept 6 of the election is pushed back because of the Voting Rights violation.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

## <u>DEFENDANT CLASS ACTION ALLEGATIONS</u>

### Defendant Class Supervisors of Elections

68.    This action is brought against Defendant Shirley N. Weber As public officer, Defendant Weber can be expected to litigate this action with the vigor and forthrightness required of a representative party.

69.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(A) in that the prosecution of separate actions against individual members of the class would create a risk of inconsistent or varied adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the Defendant.

70.    A defendant class is independently appropriate under Federal Rule of Civil Procedure 23(b)(1)(B) because adjudications with respect to individual class members, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede the ability of the other nonparty members to protect their interests.

71.    In the alternative, this action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) in that the relief Plaintiffs seek— namely, an injunction prohibiting application or

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

enforcement of the challenged restrictions—is identical as to each member of the defendant class and makes final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of Section 2 of the Voting Rights**
**Act 52 U.S.C. § 10301, *et seq.***
**(Intentional Racial Discrimination and Discriminatory Results)**

72.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

73.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), provides in pertinent part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .

74.     The Defendant's Voter Guide participation limitation to only replacement candidates violates Section 2 of the Voting Rights Act because these provisions were adopted for the purpose of denying voters of color full and equal access to the political process.

75.     These provisions would violate Section 2 even in the absence of discriminatory intent, because, by their discriminatory impact, they will

"result in a denial or abridgement" of the right of voters of color to vote and to participate equally in the democratic process.

76.    violates of the Voting Rights Act because, given the "totality of circumstances," including the long history of racial discrimination in California, the challenged provisions, individually and cumulatively, will disproportionately deny voters of color, including Black and Latino voters, an equal opportunity to participate in the political process and to elect representatives of their choice.

## SECOND CLAIM FOR RELIEF

**Fourteenth Amendment**
**U.S. Const. amend., XIV; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination)**

77.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

78.    42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

79.    The arbitrarily created Voter Guide participation limitation violates the Fourteenth Amendment to the United States Constitution because they were purposefully enacted and operate to deny, abridge, or suppress the right to vote of otherwise eligible voters on account of race or color.

80.    The facts alleged herein reveal that race was a motivating factor in the arbitrarily created Voter Guide participation limitation which was adopted with the racially discriminatory intent to raise obstacles to voting for people of color, including Black and Latino voters. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

81.    California's long history of racial discrimination in the context of voting, the known and reasonably foreseeable discriminatory impact of The arbitrarily created Voter Guide participation limitation, the  legislative history of the special recall election, and the tenuous and pretextual nature of the stated justifications for the Voter Guide participation limitation raise a strong inference that it was enacted with a discriminatory purpose in violation of the Fourteenth Amendment.

### **THIRD CLAIM FOR RELIEF**
**Fifteenth Amendment**
U.S. Const. amend., XV; 42 U.S.C. § 1983
(Intentional Racial Discrimination in Voting)

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

82.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

83.    42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

84.    Section 1 of the Fifteenth Amendment to the United State Constitution prohibits states from denying or abridging the right of American citizens to vote on account of their race or color.

85.    The arbitrarily created Voter Guide participation limitation violates the Fifteenth Amendment to the United States Constitution because Defendants intentionally enacted and intend to administer and enforce the Voter Guide participation limitation so as to deny and abridge the right to vote on account of race or color.

## FOURTH CLAIM FOR RELIEF
### First and Fourteenth Amendments

### U.S. Const. amends. I, XIV; 42 U.S.C. § 1983
### (Undue Burden on the Right to Vote)

86.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

87.     42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

88.     The right to vote is a fundamental constitutional right protected by both the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of California.

89.     State election laws may not place burdens upon the constitutional right to vote unless relevant and legitimate state interests of sufficient weight necessarily justify the magnitude and character of the burdens imposed. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

90.     Any burden on the constitutional right to vote—even a slight one— "must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (internal quotation marks omitted).

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

91.    The more a challenged law burdens the right to vote, the more strictly must it be scrutinized. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318-19 (11th Cir. 2019).

92.    The arbitrarily created Voter Guide participation limitation imposes severe burdens or, at a minimum, significant burdens, on the voting rights of eligible Californians by limiting their access to political information related to helping them determine the candidate for whom a vote and support may be given.

93.    Given that the Defendant never disclosed the prohibition of write in candidates placing their candidates statements in the Voter Guide until the Plaintiff tried to do so shows that the Defendant is unable to point to any substantial evidence to justify the hastily added bar of write in candidates from submitting a candidate statement in the Voter's Guide. These burdens accordingly lack any constitutionally adequate justification and the challenges provisions of the voter guide participation must be enjoined

## FIFTH CLAIM FOR RELIEF
### Freedom of Speech and Compelled Speech
### U.S. Const. amend. I; 42 U.S.C. § 1983
### (Voter Guide Participation limitation)

94.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

95.    42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

96.    Plaintiff and indeed anyone running for governor in California and wishing got a fair and honest election enjoys rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to engage in protected speech and expression, including political speech.

97.    In seeking to have their candidates statements published in the state Voter Guide write in candidates who have properly registered for the election before the publication deadline for the submission of candidate statements are engaged in speech and expression protected by the First Amendment. There is no detriment being suffered by the state in accepting for publication candidate statements from legitimate candidates willing to pay for the publication and the submission is made during the time when submissions are being still open for regular replacements candidates.

98.    Plaintiff and other write in candidates    submitting candidate statements in the course of the election, constitute speech and expressive

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

conduct intended to share Plaintiffs' belief in the importance of participation by all eligible citizens, including marginalized and excluded constituencies, in the democratic process. Advocating for that belief by working to persuade Californians to vote is core political speech and expression. *See Meyer*, 486 U.S. at 421-23.

99.    Restrictions on protected political speech and expression violate the First Amendment when they "significantly inhibit" election-related speech and association and are "not warranted by the state interests … alleged to justify [the] restrictions." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999). Laws that burden core political speech are subject to "exacting scrutiny" and will be upheld only if the restrictions are "narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995).

100.    The Defendant Shirley N Weber's limitation of participation in the California Voters; Guide to just the few persons who could register in the artificially  created 7 day period as replacement candidates and not allowing write in candidates any such equal right even when time exists infringes  on Plaintiff's and all minority candidates'  First Amendment rights. This action chills the protected speech and expression that occurs during voter registration and campaign activities.

101.    The intent and effect of the Voter Guide participation limitation's effect is to diminish and impair Plaintiff's and all persons including minorities wishing to run for governor in their  ability to engage in protected political speech and expression. It is intended to suppress the dissemination of their message however unpopular with the Democratic party before the People so they can not make an informed decision as to whom to vote and support.

102.    The Voter Guide  publication limitation is not warranted by any sufficiently weighty state interest. The State lacks any legitimate interest in sowing doubt and uncertainty among eligible California voters by denying access to the voters guide to qualified write in candidates many of whom may have missed being a replacement candidate like the Planiistss solely because of the extremely short and artificially created narrow window of registration for the election to wit: 7 days.

103.    The Voter Guide participation limitation therefore represents an unconstitutional restriction on political speech and expression and should be enjoined.

104    "Some of [the Supreme] Court's leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). A law that "compel[s] individuals to speak a particular message" is a content-based

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

1    regulation of speech and is therefore "presumptively unconstitutional." *Nat'l*

2    *Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

3        105.    The Voter Guide candidate participation limitation is not narrowly

4    tailored to serve any compelling or overriding state interest. To the extent the

5    government believes that the Voter Guide limitation is needed, the government

6    must speak for itself.  Because the Voter Guide participation limitation denies

7    properly registered write in candidates for which people will be voting at the

8    election to submit a candidate statement simply because they are write in

9    candidates and for no other reason limits their 1st amendment right to speak

10   and thereby affects their fundamental right under California law to be a

11   candidate and run for office.  As such the voter guide limitation for properly

12   registered candidates  who will be registered while the submission window is

13   open for replacement candidates   should have their candidate statements

14   published and the refusal to do so violates the First Amendment and should be

15   enjoined.

16       106.    The  same rationale and logic exists for write in candidates

17   having their names included ion the printed  the ballots if  registered before the

18   time that the  ballots are printed. If the elections is extended then the ballot

19   printing date will be extended as well. So any addition of write in candidates

20   names on the ballots will not burden the state if said names are submitted prior

21   to the publishing date for the ballots.

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

## **PRAYER FOR RELIEF**

107.    Wherefore, Plaintiffs respectfully request that this Court:

a.  Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, declaring that the acceleration of the Special California Recall Election for Governor and the limitation to participation in the Voters Guide to only replacement candidates who were fortunate enough to have registered in the one specially created registration period are illegal and unconstitutional in violation of Sections 2 and 208 of the Voting Rights Act of 1965, 52 U.S.C. §§ 10301 and 10508, and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution;

b.  Preliminarily and permanently enjoin Defendant Shirley N Weber her respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from holding the recall election for Governor Newson until the state mandated 30 day review period had been completed and from denying  properly registered write candidates from being in the Voter's Guide if registered prior to the closing date allowed to replacement candidates

TITLE OF DOCUMENT:  **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**

c. Retain jurisdiction and subject Defendants to a preclearance requirement pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c);

d. Issue an order requiring Defendant to pay Plaintiffs' costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by, *inter alia*, 42 U.S.C. § 1988 and other applicable laws;

f. If write in candidates fully register before the printing of the ballots, their names are to be added on the ballots the same as replacement candidates

e. Grant such other and further relief as may be just and equitable.

Dated: July 19, 2021

Respectfully Submitted

   *s* Michael Lynn Gabriel

Law Office of Michael Lynn Gabriel
1903A Cooley Ave
East Palo Alto, CA 94303
650-888-9189
aetal@earthlink.net

TITLE OF DOCUMENT: **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    CASE NO: 21-5605**